FILED
03 APR 14 PM 2:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DARLA TILLERY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. CV-01-S-2736-NE |
| ) | |
| ATSI, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This court previously entered summary judgment in favor of defendant on all but one of the claims asserted by plaintiff — that is, excepting only her religiously hostile work environment claim.[1] Defendant subsequently filed a motion to reconsider, arguing that: "(i) Plaintiff never asserted a hostile environment claim until she filed her opposition to summary judgment, which is too late; and (ii) Plaintiff's hostile work environment claim fails as a matter of law because Plaintiff admitted that her working conditions were not altered by the alleged harassment."[2] The motion was granted, and the parties were directed to file additional briefs.[3]

## I. DISCUSSION

The first issue to be addressed is whether a religiously hostile work environment claim was embraced in plaintiff's EEOC charge and ensuing judicial-complaint, or was an issue bootlegged into the case by counsel in an effort to defeat summary judgment.

A.   **The Claims Alleged by Plaintiff**

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not

---

[1] *See* doc. nos. 29 and 30 (order and memorandum opinion entered on Jan. 15, 2003).
[2] Doc. no. 33 (motion for reconsideration filed Feb. 24, 2003), at 1.
[3] *See* doc. no. 34 (submission order entered on Feb. 25, 2003).

included in her EEOC charge. . . . [A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Cheek v. Western and Southern Life Insurance Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (citations omitted).[4] "Nevertheless, because most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Id.* Stated differently, "the specific words of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970).[5] Instead, the claims that may be alleged in a judicial complaint are limited by four boundaries: (i) the specific claims alleged in the underlying EEOC charge;[6] (ii) those claims which are "like or reasonably related to" those alleged in the underlying charge;[7] (iii) the scope of the EEOC investigation that can reasonably be expected to grow out of the charge of discrimination;[8] and (iv) those discriminatory acts which were in fact

---

[4] As the Seventh Circuit has observed, "[t]his rule serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employee some warning of the conduct about which the employee is aggrieved." *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (citations omitted).

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[6] *See, e.g., Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000) ("The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation.").

[7] *E.g., Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 162 (5th Cir. 1971) ("[T]he complaint in the civil action may properly encompass any discrimination *like or reasonably related to* the allegations [contained in the EEOC] charge and growing out of such allegations.") (emphasis supplied) (citations and internal quotation marks omitted); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970) ("[T]he allegations in a judicial complaint filed pursuant to Title VII 'may encompass any kind of discrimination *like or related to* allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission.'") (quoting *King v. Georgia Power Co.*, 295 F. Supp. 943, 947 (W.D. Ga. 1968)) (emphasis supplied); *see also, e.g., Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (*en banc*) (quoting *Danner, supra*).

[8] *E.g., Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994) (citing *Sanchez, supra*). As the Seventh Circuit observed, however, this "part of the test is difficult to apply because it requires speculation as to what the EEOC might or might not discover in the course of an investigation." *Cheek v. Western and Southern Life Insurance Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

considered during the EEOC's investigation.[9]

### 1. Plaintiff's EEOC charge

The starting point is the EEOC charge itself.[10] On that portion of the form used to specify the form of discrimination complained of, plaintiff marked the box next to "Religion." She then typed the following statements in the body of her charge:

I.  I began my employment with the Respondent, ATSI, Inc. in August of 1998. I was hired by Christopher Miller, Owner. My position was to answer the phone and keep up with the field personnel.

II. Throughout my employment with the Respondent, I was continually questioned about my religious beliefs by Mr. Miller. Mr. Miller would comment on my past divorce and how I should attend "his" church to get an annulment of my past sins so I could become a member. Mr. Miller would ask me virtually every Monday about not being in church.

III. On January 18, 2001, I was terminated from my employment by Mr. Miller for allegedly [sic] "dereliction of duty." However, I deny the allegations of my termination and believe the reasons for my termination were pretextual in nature for discrimination due to religion. Mr. Miller made it known [sic] his dislike for my not attending church.

IV. On information and belief, I believe that I was discriminated against because of religion in termination and other terms and conditions of employment.[11]

### 2. Plaintiff's judicial complaint

The pertinent allegations of plaintiff's single-count complaint are virtually identical to those of her EEOC charge, even to the extent of repeating the same spelling and grammatical errors: *i.e.*,

---

[9] *E.g., Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 505 (7th Cir. 1994) ("We may grant that, if the EEOC considered the allegation of sexual harassment against Crady to be a permissible amendment to Cheek's EEOC charge *and therefore investigated Crady's conduct*, the allegations of sexual harassment should be treated as if it were part of the charge.") (emphasis supplied); *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985).

[10] *See supra* note 6.

[11] Plaintiff's EEOC Charge, stamped as "received" by the EEOC on Apr. 6, 2001. Due to the dereliction of defense counsel, no easy citation to this document may be given. It is deeply buried in a mass of unrelated documents included in defendant's unbound, disorganized, and inadequately indexed evidentiary materials. *See* doc. no. 18 (defendant's evidentiary submission), at Tab 6 ("Exhibits to the Deposition of Darla Tillery taken on June 26, 2002").

8. The plaintiff began her employment with the defendant in August of 1998. The plaintiff was hired by Christopher Miller, Owner. The plaintiff's position was to answer the phone and keep up with the field personnel.

9. Throughout the plaintiff's employment, she was continually questioned about her religious beliefs by Mr. Miller. Mr. Miller would comment on the plaintiff's past divorce and how she should attend "his" church to get an annulment of her past sins so she could become a member. Mr. Miller would ask the plaintiff virtually every Monday about not being in church.

10. On January 18, 2001, the plaintiff was terminated from her employment by Mr. Miller for allegedly [sic] "dereliction of duty." However, the plaintiff denies the allegations of her termination and believe [sic] the reasons for her termination were pretextual in nature for discrimination due to religion. Mr. Miller made it known [sic] his dislike for the plaintiff not attending church.[12]

3. **Analysis of claims asserted**

Clearly, neither the statements in plaintiff's EEOC charge, nor the allegations of her complaint, *explicitly* claim that she was subjected to a religiously hostile work environment. The court cannot determine whether such a claim was in fact considered during the EEOC's investigation of plaintiff's charge,[13] because neither plaintiff nor defendant favored this court with a copy of the Commission's determination and notice of right to sue. Accordingly, the court assumes such a claim was not considered. Thus, the issues that must be addressed are these: whether a religiously hostile work environment claim is "like or reasonably related to" plaintiff's *stated charge* (*i.e.*, that plaintiff was unlawfully discharged because she did not attend Mr. Miller's church); or whether it is reasonable to assume that such a claim would have grown from the EEOC's investigation of plaintiff's stated charge?[14] The following decisions of the Fifth, Seventh, and Eighth Circuit Courts of Appeal are somewhat instructive on these issues. *Cheek v. Western and Southern Life Insurance*

---

[12] Complaint (doc. no. 1), at 2-3.

[13] *See supra* note 9 and accompanying text.

[14] *See supra* notes 7 & 8 and accompanying text.

*Co.*, 31 F.3d 497 (7th Cir. 1994); *Williams v. Little Rock Municipal Water Works*, 21 F.3d 218 (8th Cir. 1994); *Hornsby v. Conoco, Inc.*, 777 F.2d 243 (5th Cir. 1985).

The plaintiff in *Hornsby v. Conoco*, for example, filed her original EEOC charge on May 29, 1981, alleging that she had been fired because of her age, sex, and in retaliation for complaining of discrimination when she was denied a promotion. 777 F.2d at 245; *see also id.* at 247. "More than seven months later, on January 4, 1982, Hornsby filed an amended charge, this time indicating that the cause of discrimination was sex, age, retaliation *and* sexual harassment." *Id.* at 245 (emphasis in original). The amended charge had been filed more than 180 days "after the alleged unlawful employment practice occurred." *See* 42 U.S.C. § 2000e-5(e)(1). The inquiry confronting the *Hornsby* court, therefore, was whether the sexual harassment claim related back, under the *Sanchez* standard,[15] to the allegations of the original charge, or was time-barred. The Fifth Circuit concluded that it was barred, reasoning as follows:

> The facts included in the [original EEOC] complaint make no reference to sexual harassment. When Hornsby amended her complaint in January, she added both a new and independent charge, sexual harassment, and new and independent facts to support this claim. Her actions were far more substantive than merely cures to technical defects.[16]
>
> . . .
>
> Our holding in the instant case is consistent with *Sanchez*. . . . In her amended complaint, however, Hornsby, unlike Sanchez, added a charge, and facts as well, that are independent of the allegations in her first complaint. Thus, the amended complaint does not properly relate back to the original.

---

[15] *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970) ("[T]he allegations in a judicial complaint filed pursuant to Title VII 'may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission.'") (quoting *King v. Georgia Power Co.*, 295 F. Supp. 943, 947 (W.D. Ga. 1968)).

[16] The *Hornsby* Court had previously observed that "[a]n amendment may for certain limited reasons, such as curing technical defects or omissions, including failure to verify the charge, relate back to the date of the first filing." *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 247 (5th Cir. 1985) (citing 29 C.F.R. § 1601.12(b)).

*Hornsby*, 777 F.2d at 247.

Similarly, in *Cheek v. Western and Southern Life Insurance Co.*, 31 F.3d 497 (7th Cir. 1994), the Seventh Circuit concluded that, "[o]rdinarily, a claim of sexual harassment cannot be reasonably inferred from allegations in an EEOC charge of sexual discrimination." *Id.* at 503. The female plaintiff in *Cheek* was employed as an insurance sales representative. She filed an EEOC charge alleging that, "from September 1989 until May 4, 1990, she had been 'constantly intimidated by' *her sales manager, Greg Petsovich*, and that she had been forced to pay her clients' insurance premiums, while three male sales representatives had been neither 'intimidated' nor required to pay their clients' insurance premiums." *Id.* at 499 (emphasis supplied); *see also id.* at 500. The EEOC determined there was not reasonable cause to believe that Title VII had been violated and terminated its investigation. The plaintiff nevertheless filed suit. Count I of her complaint alleged that her employer had "unlawfully discriminated against her on account of her sex *by transferring her from her original sales route to a less-lucrative sales route and by engaging in a pattern or practice of transferring women sales representatives to unprofitable sales routes*." *Id.* at 500-501 (emphasis supplied). Count III of the complaint alleged that her employer's "*district manager, Norman Crady, created a hostile work environment by sexually harassing her and her female co-workers*." *Id.* at 499 (emphasis supplied); *see also id.* at 503. The Seventh Circuit affirmed the district court's entry of summary judgment in favor of defendant on both counts, saying that neither claim was "like or reasonably related to" the allegations of plaintiff's EEOC charge. With regard to the plaintiff's *sex discrimination claim*, the Seventh Circuit observed that:

> Both the EEOC charge and count I of the complaint . . . assert forms of sex discrimination. But the issue before us is whether the claims in count I of the complaint are "like or reasonably related to" the allegations in the EEOC charge. We hold that they are not. Because an employer may discriminate on the basis of sex in

> numerous ways, a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of discrimination. The claims are not alike or reasonably related unless there is a factual relationship between them. This means that the EEOC charge and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals*. . . .

*Id.* at 501 (emphasis in original) (citations omitted). The Court held that plaintiff did not meet that standard, because the allegations in her EEOC charge

> did not describe the conduct giving rise to the claims of sex discrimination in count I of her complaint. In count I of her complaint, Cheek alleged that district manager Norman Crady had a practice of assigning female employees to unprosperous routes and that Crady discriminated against her because of her sex by transferring her from the Elkhart sales route to the less-profitable South Bend sales route. The [EEOC] charge, by contrast, was based on [Greg] Petsovich's [plaintiff's sales manager's] requirement that Cheek, but not Cheek's male counterparts, pay clients' insurance premiums. *Thus the charge is unrelated to the claims in count I in at least two ways: the type of conduct alleged to be discriminatory, and the identity of the individuals involved.* These differences between the claims in the complaint and the allegations in the charge cannot be overlooked, even under the liberal standard of pleading applied to allegations in an EEOC charge. . . .

*Id.* at 502 (emphasis supplied). With regard to the *sexual harassment claim*, the Seventh Circuit stated two reasons warranting dismissal.

> In count III of her complaint Cheek alleged that [her district manager] Norman Crady created a hostile work environment through his sexual harassment of her and other women in her office. *When an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge. Ordinarily, a claim of sexual harassment cannot be reasonably inferred from allegations in an EEOC charge of sexual discrimination.* So it is here. The claim of sexual harassment in count III of Cheek's complaint cannot be reasonably inferred from the allegations of sex discrimination in her EEOC charge.
>
> But Cheek concedes that she did not claim that Crady sexually harassed her by making disparaging or sexually suggestive comments until [the filing of] her [judicial] complaint. In arguing that this claim nevertheless falls within the scope of the claims she pursued before the EEOC, Cheek points to statements in her charge, affidavit, and letter of November 12, 1990. Cheek alleged in her EEOC charge that

-7-

> her *staff manager [Greg Petsovich]* "intimidated" her. And in her EEOC affidavit, Cheek alleged that the staff manager treated her in a "hostile, inferior, unprofessional manner." The claim of sexual harassment in count III of Cheek's complaint cannot be inferred from these allegations *because nothing in the charge or affidavit suggests that Cheek was complaining of a sexually hostile environment.* . . .
>
> . . .
>
> Here, a claim of sexual harassment cannot be reasonably inferred from anything alleged in Cheek's charge. . . . The description of Petsovich's conduct in Cheek's charge and EEOC affidavit supports only one theory, that of sex discrimination. . . . We can conceive of circumstances under which a claim of sexual harassment could be inferred from Cheek's allegation that Petsovich treated her in a "hostile, inferior, unprofessional manner." But such an inference would be unreasonable under the circumstances of this case because it is clear that this allegation derives from Cheek's having to pay her clients' insurance premiums. Moreover, even if the allegations in Cheek's charge could support a claim of sexual harassment, the claim would be against *Petsovich*. The claims of sexual harassment in count III of Cheek's complaint are against Crady.

*Cheek*, 31 F.3d at 503-04 (*italicized* emphasis added, underscored emphasis in original); *see also Aramburu v. The Boeing Company*, 112 F.3d 1398, 1409-1410 (10th Cir. 1997) (holding that plaintiff's hostile environment claim was barred because it "was not reasonably related to his wrongful discharge claim").

Finally, in *Williams v. Little Rock Municipal Water Works*, 21 F.3d 218 (8th Cir. 1994), the plaintiff filed an EEOC charge alleging race discrimination in connection with her denial of a promotion in 1987. The EEOC made a finding of "no cause" to support the allegations, and plaintiff elected not to take further legal action. She filed a second EEOC charge in 1990, alleging retaliation in connection with her subsequent denial of a merit raise and promotion, and asserting that the second denial of promotion was premised entirely on the fact that she had filed an EEOC charge in 1987. After the EEOC issued a second finding of "no cause" to support plaintiff's allegations, she filed a judicial complaint alleging *both* unlawful retaliation *and* race discrimination. *See id.* at 221.

The Eighth Circuit affirmed the trial court's entry of summary judgment in favor of the defendant on the race discrimination claim, saying:

> Williams' claims of race discrimination are separate and distinct from her claims of retaliation. Not only did Williams fail to check the box for race discrimination, her 1990 EEOC charge and supporting affidavit specifically and unambiguously alleged that Water Works retaliated against her because she had filed a charge with the EEOC in January 1987. The 1990 EEOC charge does not even hint of a claim of race discrimination. This amounts to more than a mere technicality and is the product of an unconstrained reading of Williams' charge. The only claim properly addressed by EEOC administrative processes was that of retaliation. Therefore, we hold that the district court did not err in granting Water Works' motion for summary judgment as to Williams' Title VII race discrimination claims.

*Williams*, 21 F.3d at 223.

Applying the rationale of these decisions to the facts of this case, viewed in the light most favorable to plaintiff, it must be conceded that plaintiff's claims implicate the *same individual*, Christopher Miller. Further, it could be argued that the specific allegations of plaintiff's EEOC charge describe — albeit in an extremely abbreviated form — the *same conduct* that is the basis for her religiously hostile work environment claim: *i.e.*, that she "was continually questioned about [her] religious beliefs by Mr. Miller"; he commented "on [her] past divorce and how [she] should attend 'his' church to get an annulment of [her] past sins so [she] could become a member"; he "would ask [plaintiff] virtually every Monday about not being in church"; and he "made . . . known his dislike for [her failure to attend his] church."

Even so, this court cannot say with complete assurance that the religiously hostile work environment claim argued in plaintiff's brief in opposition to summary judgment is "like or reasonably related to" the allegations of either her EEOC charge or ensuing judicial complaint. The Seventh Circuit's observation in *Cheek*, concerning an employer's ability to "discriminate on the basis of sex in numerous ways," 31 F.3d at 501, is apropos here. An employer may discriminate

on the basis of *religion* in at least three ways: by subjecting an employee who practices the doctrines of an unfavored religious faith to disparate treatment; by failing to accommodate particular religious practices or requirements; or by harassing the employee. Just because a plaintiff complains in an EEOC charge and judicial complaint that she was fired because of her religion (or failure to attend her employer's church), which is merely one form of religious discrimination, does not mean that her claim encompasses all other forms of religious discrimination. This, admittedly, close call under the facts of this case is, nevertheless, buttressed by the following allegations of plaintiff's complaint:

> 1. The jurisdiction of this Court is invoked pursuant to the Act of Congress known as 28 U.S.C. §§ 1331, 1334(4), 2201 and 2202, 42 U.S.C. § 2000e et seq. This suit is authorized and instituted pursuant to Tile VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. § 2000e et seq., the "Civil Rights Act of 1991". The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secure by 42 U.S.C. § 2000e et seq.. providing for injunctive and other relief against *religious discrimination in employment*.
>
> 2. The plaintiff timely filed her *charge of religion discrimination* with the Equal Employment Opportunity Commission (EEOC) within 180 days after the last discriminatory treatment. The plaintiff further filed her *religion discrimination suit* within 90 days after receipt of her right-to-sue letter issued from the EEOC.
>
> . . .
>
> 6. The plaintiff has been discriminated against because of her *religion* in *termination* as well as other "terms, conditions, [or] privileges of employment." 42 U.S.C. § 2000e-2(a)(1).
>
> 7. The plaintiff was subjected to *unequal treatment because of her religion.*[17]

The foregoing statements, read in conjunction with those portions of plaintiff's EEOC charge and complaint previously quoted, point to one form of discrimination: disparate treatment — that

---

[17] Complaint (doc. no. 1), at 1-2 (underlined emphasis in original, *italicized* emphasis added).

plaintiff was unlawfully discharged because she did not attend Christopher Miller's church. It is a long stretch from there to plaintiff's contention that she also was complaining about another form of discrimination entirely; *i.e.*, that she was subjected to religious harassment that was so severe or pervasive that it affected the terms, conditions, or privileges of her employment and created a discriminatorily hostile or abusive work environment.

In point of both semantics and law, the only allegation that arguably could be construed as signaling a hostile work environment claim is plaintiff's bare reference in paragraph six of her complaint to "other 'terms, conditions, [or] privileges of employment.'" Title VII prohibits employment discrimination against an individual with respect to her "compensation, *terms, conditions, or privileges of employment*, because of such individual's race, color, *religion*, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis supplied).[18] As the Supreme Court observed in *Meritor Savings Bank, FSB v. Vinson*, "the phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment . . .' in employment." 477 U.S. 57, 64, 106 S. Ct. 2399, 2404, 91 L. Ed. 2d 49 (1986) (citations omitted). Consequently, as the Seventh Circuit has observed, "the reach of Title VII is not limited solely to discrimination that can be described as 'economic' or 'tangible'"; instead, the Act "extends to *workplace harassment* that is attributable to the plaintiff's sex, as *Meritor* made clear, *as well as*

---

[18] The full text of this keystone provision of the Civil Rights Act of 1964 reads as follows:

> It shall be an unlawful employment practice for an employer—
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

to her religion." *Venters v. City of Delphi*, 123 F.3d 956, 974-75 (7th Cir. 1997) (quoting *Meritor*, 477 U.S. at 64, 106 S. Ct. at 2404) (other citations omitted) (emphasis supplied).

Of course, Title VII claims are judged by the same liberal "notice pleading" standards applicable to all other civil actions. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002) (holding that "the ordinary rules for assessing the sufficiency of a complaint apply" to Title VII claims) (citation omitted). The Federal Rules of Civil Procedure require only that a complaint contain a "'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)).[19] "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*, 534 U.S. at 512, 122 S. Ct. at 998.

Even so, pleadings must be "something more than an ingenious academic exercise in the conceivable." *Marsh v. Butler County*, 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc). Although notice pleading may not require that the pleader state a specific fact to cover every element, or allege with precision each element of a prima facie claim, *see Swierkiewicz*, 534 U.S. at 508, 122 S. Ct. at 992, the Eleventh Circuit has explained that the complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001),

---

[19] With but few exceptions (fraud claims being one, *see* Fed. R. Civ. P. (9)(b)), there are only three requirements for pleading a claim in a federal action: "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . ., (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed. R. Civ. P. 8(a). "There are two other provisions of Rule 8 that are pertinent: 'Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading are required.' Fed. R. Civ. P. 8(e)(1); and 'All pleadings shall be so construed as to do substantial justice.' Fed. R. Civ. P. 8(f)." *Gorski v. New Hampshire Dept. of Corrections*, 290 F.3d 466, 473 n.5 (1st Cir. 2002) (same).

*cert. denied*, 534 U.S. 1129, 122 S. Ct. 1067, 151 L. Ed. 2d 970 (2002).

The best that might be said of plaintiff's reference to "other 'terms, conditions, [or] privileges of employment,'" therefore, is that it was a *faint* signal that she *might be* asserting a religiously hostile work environment claim. On reconsideration of plaintiff's deposition, however, this court concludes that *she* negated that possibility when testifying as follows:

> Q. Is this complaint a full and complete and honest description of the claims you are making against ATSI?
>
> A. Yes.
>
> Q. Do you have any claims that are not asserted here in the complaint?
>
> A. No.[20]
>
> . . . .
>
> Q: Besides your claim that you were terminated — your discriminatory termination claim, do you have any other claims of discrimination against ATSI?
>
> A: No.[21]

Upon full reconsideration, this court concludes that the religiously hostile work environment claim argued in plaintiff's brief in opposition to summary judgment was not adequately alleged or pled in either her EEOC charge and ensuing judicial complaint and, therefore, is time-barred.

**B. Substantive Merits of Plaintiff's Hostile Work Environment Claim**

Even if the foregoing holding is incorrect, the court alternatively concludes upon reconsideration that plaintiff failed to state a prima facie case.[22]

---

[20] Doc. no. 20 (plaintiff's evidentiary submissions), Tab 1 (Tillery deposition), at 63.

[21] *Id.* at 269.

[22] The facts pertinent to the analysis of the substantive merits of plaintiff's religiously hostile work environment claim are set forth on pages two through six of the memorandum opinion entered on January 15, 2003 (doc. no. 29), and will not be reiterated here.

The Eleventh Circuit apparently has not addressed a hostile work environment claim based upon a plaintiff's religion. Even so, this court previously held that the test applied to hostile work environment claims based on other prohibited characteristics (but principally sex) is equally applicable to the assessment of a religiously hostile work environment claim.[23] Accordingly, plaintiff must satisfy five elements to demonstrate a prima facie case: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based upon her failure to conform her behavior to her supervisor's religious standards; (4) the harassment complained of was sufficiently severe or pervasive to alter the terms or conditions of employment, and create a discriminatorily abusive working environment; and (5) the employer is liable for the environment under a theory of either direct or vicarious liability. *Cf., e.g., Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); *Henson v. City of Dundee*, 682 F.2d 897, 903-05 (11th Cir. 1982); *Bivins v. Jeffers Vet Supply*, 873 F. Supp. 1500, 1507 (M.D. Ala. 1994).

The fourth element of a hostile work environment claim is the one that "tests the mettle of most . . . harassment claims." *Gupta v. Florida Board of Regents*, 212 F.3d 571, 583 (11th Cir. 2000). The Supreme Court has repeatedly emphasized that "harassment is actionable under Title VII *only if* it is 'so "severe or pervasive" as to "alter the conditions of [the victim's] employment and create an abusive working environment."'" *Clark County School District v. Breeden*, 532 U.S. 268, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (per curiam) (emphasis supplied) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (in turn quoting *Meritor*, 477 U.S. at 67, 106 S. Ct. at 2405)).[24]

---

[23] *Id.* at 14-15.

[24] As the Supreme Court explained in *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998),

> [t]he prohibition of harassment on the basis of sex . . . forbids only behavior so objectively offensive

The fourth element of a hostile work environment claim contains both an objective and a subjective component. To be actionable under Title VII, the behavior complained of must result in a work environment "that a reasonable person would find hostile or abusive," *and*, an environment that *the victim* "subjectively perceive[s] . . . to be abusive." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22, 114 S. Ct. 367, 370-71, 126 L. Ed. 2d 295 (1993); *see also, e.g., Miller*, 277 F.3d at 1276 (same).

This court previously concluded, on the basis of the evidence summarized in paragraphs (1) through (9) of Section I of the memorandum opinion entered on January 15, 2003,[25] that several of Miller's religious inquiries could be deemed *objectively* offensive by a reasonable jury: *e.g.*, Miller's queries as to the legitimacy of plaintiff's children, and whether a prior marriage had been terminated by divorce *versus* the doctrine of annulment sanctioned by the Catholic Church.

What this court failed to do in the previous opinion, however, was to focus upon the *subjective component* of the fourth prima facie element.

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment — an environment that a reasonable person would find hostile or abusive — is beyond Title VII's purview. *Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.*

*Harris*, 510 U.S. at 21-22, 114 S. Ct. at 370 (emphasis supplied); *see also, e.g., Johnson v. Booker*

---

as to alter the "conditions" of the victim's employment. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment — an environment that a reasonable person would find hostile or abusive — is beyond Title VII's purview." . . . We have always regarded that requirement as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace — such as male-on-male horseplay or intersexual flirtation — for discriminatory "conditions of employment."

*Oncale*, 523 U.S. at 81, 118 S. Ct. at 1003 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993) (holding that a Title VII hostile work environment claim is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment")).

[25] *See* doc. no. 29 (memorandum opinion entered Jan. 15, 2003), at 3-5.

*T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 509 (11th Cir. 2000) ("Harassment is subjectively severe and pervasive if the complaining employee perceives the harassment as severe and pervasive ....").

Ordinarily, the subjective component is satisfied by the plaintiff's own testimony. Even so, as (now) Chief Judge Edmondson observed in his concurring opinion in *Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999) (en banc), the mere fact that this "burden can usually be met easily by a properly motivated plaintiff *does not mean that meeting the burden is a meaningless formality or that actual evidence is unrequired.* This evidence ... is the heart of the case. And, therefore, *courts must allow no fudging on the proof.*" *Mendoza*, 195 F.3d at 1253-54 (Edmondson, J., concurring) (emphasis supplied) (footnotes omitted).

The present case presents one of those unusual instances in which the plaintiff did not subjectively perceive her working environment to be either severely or pervasively hostile or abusive. Her deposition testimony unambiguously reveals that she did not find Miller's religious statements and inquiries to be so abusive that it altered the terms or conditions of her employment:

> Q: Besides your medical or personal reasons, was there anything else that kept you from doing your job effectively?
>
> A: No, sir.
>
> Q: *And you wanted to keep your employment at ATSI?*
>
> A: *Oh, yes, very much.*
>
> Q: You were able to do your job effectively?
>
> A: I thought I did.
>
> Q: *Were the discussions you were having with Chris* [Miller], *were they inhibiting your ability to do your job at all?*

    A:    *No.*[26]

Plaintiff attempts to salvage her claim by citing another part of her deposition, where she vaguely stated that, a couple of months before her termination, she began to "fe[el] disliked" and was depressed.[27] Notwithstanding, that testimony neither contradicts nor qualifies her earlier, unambiguous admission that Miller's discussions did not inhibit her ability to perform or enjoy the duties of her job.

Plaintiff also claims that her job performance was affected on those occasions when Miller would go into his office, shut the door, and thereby preclude plaintiff's access to the accounting program on his computer.[28] Plaintiff does not elaborate on how often such incidents occurred, the degree to which they affected her job performance, or how they were motivated by plaintiff's religion (or failure to attend Miller's church). Even drawing all reasonable inferences in favor of plaintiff, such a vague reference cannot reasonably be construed to establish a discriminatory animus that was so severe or pervasive that it altered the terms and conditions of her working environment.

Accordingly, following reconsideration, plaintiff's remaining claim will be dismissed. An appropriate order will be entered contemporaneously herewith.

    DONE this 14th day of April, 2003.

                                            */s/ Lynwood Smith*
                                            United States District Judge

---

[26] Doc. No. 20 (plaintiff's evidentiary submissions), Tab 1 (Tillery deposition), at 135-36 (emphasis supplied).
[27] *Id.* at 277-78. Several weeks *after* her termination, plaintiff was diagnosed with bipolar disorder. *Id.* at 277.
[28] *Id.* at 82.